IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| GRACE J. CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16CV1087 |
| | ) | |
| GUILFORD COUNTY, | ) | |
| NORTH CAROLINA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Plaintiff initiated this action against Defendant Guilford County, North Carolina ("Defendant" or "County") alleging employment discrimination in violation of 42 U.S.C. § 2000e-2 et seq. ("Title VII"), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611 *et seq.* On September 30, 2017, this Court entered a Memorandum Opinion and Order ("2017 Order") dismissing each of the claims in Plaintiff's Complaint except her FMLA retaliation claim. (ECF No. 11 at 16.) Before the Court is Defendant's Motion for Summary Judgement with respect to this sole remaining claim. (ECF No. 20.) For the reasons outlined below, the Court will grant Defendant's motion.

## I.    STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence and "resolve all factual disputes and any competing, rational

inferences in the light most favorable" to the nonmoving party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)). The role of the court is not "to weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted); *see Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995) (finding that "unsupported speculation . . . is not enough to defeat a summary judgment motion").

In opposing a properly supported motion for summary judgment, the nonmoving party cannot rest on "mere allegations or denials." *Anderson*, 477 U.S. at 248. Rather, the nonmoving party must support its assertions by citing to particular parts of the record or by showing that the materials cited do not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of [her] claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).

## II.    DISCUSSION

Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period." 29 U.S.C. § 2612(a)(1). In addition to providing these substantive rights, the FMLA provides that, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this

subchapter." 29 U.S.C. § 2615(a)(1). Thus, the FMLA protects employees from discrimination or retaliation for exercising their substantive rights. *See Yashenko v. Harrah's NC Casino Co.,* 446 F.3d 541, 550–51 (4th Cir. 2006). The Fourth Circuit has held that "[r]etaliation claims brought under the FMLA are analogous to those brought under Title VII." *Adams v. Anne Arundel Cty. Pub. Sch.*, 789 F.3d 422, 429 (4th Cir. 2015). Accordingly, like Title VII claims, where there is no direct evidence of discriminatory animus, such claims are analyzed under the burden-shifting *McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–06 (1973); *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015). To succeed on her retaliation claim, a plaintiff must first demonstrate a prima facie case showing: (1) that she "engaged in protected activity"; (2) that the defendant "took adverse action against [her]"; and (3) that the "adverse action was causally connected to the plaintiff's protected activity." *Yashenko*, 446 F.3d at 551 (quoting *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998)). If a plaintiff makes this showing, then the defendant must offer a nondiscriminatory explanation for the termination. *Vannoy v. Fed. Reserve Bank of Richmond*, 827 F.3d 296, 304 (4th Cir. 2016). If the defendant offers such an explanation, the burden then shifts back to Plaintiff to establish that Defendant's proffered explanation is pretext for FMLA retaliation. *Id.*

Defendant, in this case, moves for summary judgment on Plaintiff's FMLA retaliation claim arguing that "the time between Plaintiff's separation from employment and her exercise of FMLA leave [is] too remote in temporal proximity to provide a valid basis for retaliation." (ECF No. 21 at 2.) Further, according to Defendant, "[it] has provided a legitimate, non-retaliatory reason for Plaintiff's separation from employment." (*Id.*) Plaintiff argues, in response, that the third element of the prima facie case of retaliation—whether Plaintiff's

termination was causally connected to her assertion of FMLA rights—"is a question of fact for the jury, and the jury could find that [D]efendant was upset because [P]laintiff had exercised [her] FMLA rights and continued to remain out of work under [D]efendant's policy for leave without pay." (ECF No. 26 at 7.)

It is undisputed that Plaintiff engaged in a protected activity, *i.e.* that she took FMLA leave.[1] The Fourth Circuit has held that taking FMLA leave is a protected activity. *Yashenko*, 446 F.3d at 546, 551. The evidence shows Plaintiff was employed by Defendant from November 2009 until August 24, 2015. (ECF No. 21-1 at 9; ECF No. 21-5 at 29.) In 2015, Plaintiff used and exhausted her twelve weeks of authorized FMLA leave during the periods from February 10, 2015 to February 20, 2015, and March 20, 2015 to May 29, 2015. (ECF No. 21-3 at 9–10, 12–18; ECF No. 21-1 at 32.) Thus, the first element of Plaintiff's prima facie case is satisfied.

With respect to the second element of Plaintiff's prima facie case—that Defendant "took adverse action against [Plaintiff]"—the parties differ on whether Plaintiff voluntarily resigned or whether she was terminated. Defendant argues that Plaintiff voluntarily resigned from her employment when she failed to report for duty at the expiration of her approved leave of absence on August 17, 2015. (ECF No. 21 at 19.) Defendant points to the language of its personnel policy Regulation 24 ("Regulation 24")[2], which states, in pertinent part, that "if the employee fails to report for duty at the expiration of [her] leave of absence, at the sole

---

[1] Though Plaintiff alleged in her Complaint that she was exercising FMLA leave from June to September 1, 2015, (ECF No. 3 ¶¶ 12, 44), she now acknowledges in her brief that "she had used up all of her Family and Medical Leave Act time as of May 29, 2015," (ECF No. 26 at 3).

[2] Regulation 24 allows an employee to take a leave of absence in addition to the time granted by the FMLA. (ECF No. 21-5 at 22.) Such leave of absence must be approved by a supervisor. *Id.*

discretion of the County [such failure to report] will be considered a resignation." (ECF No. 21-5 at 22–23.) Plaintiff, in response, argues that her termination was not voluntary. (ECF No. 26 at 7.)

A retaliation claim's requirement that Plaintiff must have suffered an adverse employment action covers only actions by employers "that would have been materially adverse to a reasonable employee." *See Adams*, 789 F.3d at 431 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). The Fourth Circuit has held that "[a]dverse employment actions include any retaliatory act . . . if that act . . . results in an adverse effect on the terms, conditions, or benefits of employment." *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir. 2004).

The evidence here shows the following: On August 16, 2015, the night before Plaintiff was scheduled to return to work following three periods of extended leave approved by Defendant,[3] Plaintiff left a voicemail message for her supervisor that her doctor had instructed her to be out of work for the entire month of August. (ECF No. 21-5 at 19.) Other than this voicemail message, Plaintiff had no further communication with Defendant the week of August 17, 2018. (*See id.* at 29.) On August 24, 2015, Defendant mailed a letter to Plaintiff which read, in pertinent part, as follows:

> On August 16, 2015[,] you left a message with your supervisor informing that the doctor had taken you out of work through the end of August and you would be providing a doctor's note to County Human Resources. As of this date, August 24, 2015, you have not provided a note, you have not returned to work and you have made no contact with the County as to your status. Based on these facts and in accordance with Regulation #24, . . . we

---

[3] Plaintiff's approved extended leave included the following periods: (1) June 17, 2015 through June 22, 2015; (2) June 22, 2015 through June 29, 2015; and (3) July 27, 2015 through August 17, 2015. (ECF No. 21-5 at 11–15.)

> are accepting your voluntary resignation from the agency
> effective August 24, 2015.

(*Id.*)  Later that afternoon, on August 24, 2015, Plaintiff's supervisor received a note from Plaintiff's doctor, dated August 14, 2015, indicating that Plaintiff would be out of work until September 1, 2015.  (*Id.* at 27–28.)  Plaintiff attempted to return to work on September 1, 2015 and was informed by her supervisor that "her job was ending."  (ECF No. 21-8 at 3.)  She was asked to "sign a paper of [sic] accepting her resignation," and refused to do so.  (*Id.*)

Considering this evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in her favor, the evidence shows that Plaintiff did not submit a voluntary resignation and did not learn about her termination until she attempted to return to work on September 1, 2015, (ECF No. 21-8 at 3), which was over a week after Defendant had removed her from its payroll records on August 24, 2015, (ECF No. 21-3 at 25).  Although Defendant characterizes Plaintiff's separation from employment as a voluntary resignation because such characterization may be consistent with Regulation 24, that does not change the fact that Defendant's actions had a materially adverse effect on the terms, conditions, and benefits of Plaintiff's employment, in that Plaintiff ceased to be employed by Defendant on August 24, 2015.  Under these circumstances, a reasonable employee would conclude that she had been terminated.  This Court, therefore, concludes that Plaintiff has suffered an adverse employment action irrespective of how it is characterized in Defendant's Regulation 24.  Plaintiff has thus satisfied the second element of her prima facie case.

The third element of a retaliation prima facie case requires Plaintiff to show that there was a causal connection between Plaintiff having taken FMLA leave and the adverse employment action.  Defendant argues that because Plaintiff's FMLA leave was exhausted by

May 29, 2015, and she was "separate[ed] from [her] employment" over twelve weeks later, on August 24, 2015, Plaintiff cannot prove any causal link between the two occurrences. (ECF No. 21 at 20.) Plaintiff argues that even if the causal connection between the protected activity and the adverse action is weakened by the lapse in time, a jury could still find continuing retaliatory conduct and animus by the Defendant to satisfy this third element of a prima facie showing. (*See* ECF No. 26 at 8–9.)

The Fourth Circuit has held that the burden for establishing the causation element of a retaliation claim "at the prima facie stage is less onerous" than establishing causation at the pretext stage. *Foster*, 787 F.3d at 251 (internal quotation marks omitted). Plaintiff may satisfy this element by showing "mere temporal proximity between [the] protected activity and an adverse employment action" if the temporal proximity is "very close." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) (quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)). Courts have held that an adverse action taken ten weeks after a protected activity is not close enough in time to support a finding of causation, absent "additional evidence of retaliation." *Perry v. Kappos*, 489 F. App'x 637, 643 (4th Cir. 2012); *see also Clark Cty. Sch. Dist.*, 532 U.S. at 273–74 (citing cases holding that a three-month period is insufficient to show causation); *but see King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (holding that a two-month and two-week period would typically "weaken significantly the inference of causation," but did not in that case given the "particular employment situation"). If the protected activity and the adverse employment action are not sufficiently close in time, then a plaintiff must introduce "additional evidence of retaliation" to demonstrate causation. *Perry*, 489 F. App'x at 643.

The evidence here shows that Plaintiff suffered an adverse employment action on August 24, 2015, (ECF No. 21-3 at 25; ECF No. 21-5 at 29), which was over twelve weeks after her FMLA leave was exhausted on May 29, 2015, (ECF No. 21-1 at 31–32). Because Plaintiff cannot rely on temporal proximity alone to satisfy the causation element of her prima facie case, she must point to specific evidence that would allow a reasonable juror to find a causal connection between her exercise of FMLA leave and her termination. *Perry*, 489 F. App'x at 643. Plaintiff argues:

> [E]vidence of retaliatory conduct and animus is provided by the false letter of resignation dated August 24, the timely receipt of notification of [P]laintiff's doctor's certification that she would not be able to come back to work during the month of August, and ultimately the termination on September 1, when [P]laintiff rightfully refused to agree to the false letter of resignation.

(ECF No. 26 at 8–9.)[4] This Court disagrees, however, that these events demonstrate the necessary "continuing retaliatory conduct and animus" with respect to her FMLA claim. *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007). All three of the events referenced by Plaintiff relate to Plaintiff's exercise of extended leave without pay pursuant to Regulation 24 and her failure to return to work on August 17, 2015. (*See* ECF No. 26 at 8–9.) None of the above-referenced events relate to Plaintiff's exercise of FMLA leave. Moreover, the evidence shows that during the intervening period between Plaintiff exhausting her FMLA leave and the adverse employment action, Defendant approved three additional periods of extended

---

[4] Plaintiff also argues that her affidavit, (ECF No. 25), shows that Defendant's treatment of her was "exceptional and arbitrary." (ECF No. 26 at 8.) It is unclear to the Court, however, how this evidence relates to Plaintiff's claim of FMLA retaliation. Plaintiff's affidavit states the race of other employees who had been granted extended leave pursuant to Regulation 24, (ECF No. 25), seemingly confusing this issue with Plaintiff's previously-dismissed claims of discrimination on the basis of national origin and race, (*see* ECF No. 11 at 16).

leave.  This does not support Plaintiff's claim of retaliatory conduct or animus related to her exercise of her FMLA leave.  In a case such as this, where the "evidence does not provide more than a scintilla of evidence of retaliatory motive" related to Plaintiff's exercise of her FMLA leave, the plaintiff has failed to show a prima facie case.  *Ullrich v. CEXEC, Inc.*, 709 F. App'x 750, 753–54 (4th Cir. 2017) (per curiam).

Moreover, even assuming Plaintiff had been successful in establishing a prima facie case, Defendant would still be entitled to judgment as a matter of law on her FMLA claim. Consistent with the *McDonnell Douglas* framework, once a plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision to no longer employ Plaintiff.  *Vannoy*, 827 F.3d at 304.  Defendant, here, proffers that its decision to "accept[ ] [Plaintiff's] voluntary resignation" was because of Plaintiff's failure to "return to work at the expiration of her third approved extended leave without pay," consistent with Regulation 24.  (ECF No. 21 at 22.)  Plaintiff acknowledges in her deposition that she did not know whether Defendant had approved her taking extended leave to September 1.  (ECF No. 21-1 at 59; ECF No. 21-8 at 3.)  Defendant has satisfied its burden of articulating a nondiscriminatory reason for Plaintiff's termination, unrelated to the exercise of her FMLA leave.  Therefore, the presumption that would have come from Plaintiff having established a prima facie case "drops from the case," and Plaintiff must show by a preponderance of the evidence that the reason offered by Defendant is a pretext for retaliation.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255–56, 255 n.10 (1981).  Plaintiff must produce affirmative evidence of retaliatory motive or affirmative evidence that the employer's proffered explanation is simply unworthy of credence.  *See id.* at 256.  However, Plaintiff's brief simply ends at its discussion of her prima facie case.  Plaintiff's

failure to acknowledge, discuss, or put forth evidence to satisfy its burden to establish pretext by a preponderance of the evidence under the *McDonnell Douglas* framework is fatal to Plaintiff's FMLA retaliation claim. *See Vannoy*, 827 F.3d at 304 ("Once the plaintiff proffers evidence establishing his prima facie case, and the employer offers a non-retaliatory reason [for] the adverse action, the plaintiff 'bears the burden of establishing that the employer's proffered explanation is pretext for FMLA retaliation.'" (quoting *Yashenko*, 446 F.3d at 551)).

Accordingly, Plaintiff has failed to raise a genuine issue of material fact from which a jury could conclude that Defendant's real reason for terminating Plaintiff was retaliation for her exercise of FMLA leave. Defendant is, therefore, entitled to judgment as a matter of law with respect to Plaintiff's FMLA retaliation claim.

For the reasons outlined herein, the Court enters the following:

## ORDER

IT IS THEREFORE ORDERED that Defendant Guilford County, North Carolina's Motion for Summary Judgment, (ECF No. 20), is GRANTED. Plaintiff's sole remaining claim against Defendant is hereby DISMISSED WITH PREJUDICE.

A Judgment dismissing Plaintiff's action will be entered contemporaneously with this Order.

This, the 6th day of December 2018.


/s/ Loretta C. Biggs
United States District Judge